## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

James Schultz,                  :        Case No. 3:08-CV-02718

      Plaintiff,               :

v.                              :        **MEMORANDUM DECISION**
                                                    **AND ORDER**

Timothy Szott, et al.,           :

      Defendants.             :

The parties have consented to have the undersigned Magistrate enter a final judgment on all issues arising from this personal injury lawsuit filed under 28 U. S. C. § 1332(a).  Pending is Defendant Archdiocese of Detroit's (Archdiocese) Motion to Dismiss filed pursuant to FED. R CIV. P. 12(b)(2) (Docket No. 5) to which Plaintiff filed a Response (Docket No. 9) and Defendant filed a Reply (Docket No. 10).  For the following reasons, the Magistrate grants the Motion to Dismiss.

## I.  PARTIES

Plaintiff was born in Michigan in 1968, and resided there until 2006.  In 2006, Plaintiff moved to Missouri (Docket No. 8 at ¶ 8).  At the time he filed the complaint, Plaintiff was a citizen of the State of Missouri (Docket No. 8 at ¶ 3).

Ordained in January 1973, Defendant Szott was a priest and/or pastor in Defendant Archdiocese from 1973 until 2005 (Docket No. 1; Docket No. 5, Affidavit of Monsignor Ricardo E. Bass, at ¶ 4).  Upon information and belief, Defendant Szott was a citizen of the State of Arizona at the time of his death on August 21, 2008 (Docket No. 8 at ¶s 4 & 35; Docket No. 5 at ¶ 4, Affidavit of Monsignor

Ricardo E. Bass).

Defendant Archdiocese is a geographical unit of authority in the Roman Catholic Church, located in Michigan (Docket No. 8 at ¶ 5).

## II.  FACTUAL BACKGROUND

Defendant Szott served as a priest and/or pastor in the Archdiocese of Detroit, and remained under their supervision and control from 1973 to 2005.  His many duties included counseling parishioners, including minor children, as well as supervising altar boys (Docket No. 8 at ¶ 9).  In 1973, Defendant Archdiocese assigned Defendant Szott to Ascension Parish in Warren, Michigan.  Ascension Parish was under the supervision and control of Defendant Archdiocese (Docket No. 8 at ¶ 11).  From 1973 to 1976, Defendant Szott molested several young boys at Ascension Parish (Docket No. 8 at ¶ 12).  The family of John Doe One, informed Defendant Archdiocese of the abuse (Docket No. 8 at ¶ 13).

In 1976, Defendant Archdiocese reassigned Defendant Szott as co-pastor to a parish in White Lake, Michigan, that was under their supervision and control.  Defendant Szott remained at the St. Patrick parish until 1986 (Docket No. 8, at ¶ 14 & 17).  As members of the St. Patrick Parish, Plaintiff and his family placed trust in the Defendants, and were greatly influenced by them (Docket No. 8 at ¶s 15 & 16).  During this time, Defendant Szott was allowed unsupervised contact with children, including Plaintiff.  During these unsupervised encounters, Defendant Szott molested Plaintiff on numerous occasions (Docket No. 8 at ¶ 17).

In December 1980, Defendant Szott, in his role as priest and/or pastor, took Plaintiff and his two brothers to Orlando, Florida.  Defendant Szott claimed the trip was to allow Plaintiff's parents to spend New Year's free of their children (Docket No. 8 at ¶ 18).  While in Orlando, Plaintiff and Defendant Szott shared a bed.  While both were in bed, Defendant Szott rubbed his erect penis against the area of Plaintiff's rectum (Docket No. 8 at ¶ 19).

2

In the summer of 1981, Defendant Szott, in his role as priest and/or pastor, took Plaintiff to Arizona for several weeks.  Plaintiff and Defendant Szott shared a bed each night.  Defendant Szott said the purpose of the trip was to reward Plaintiff for the work he had done in the rectory (Docket No. 8 at ¶ 20).

In the winter of 1983, Defendant Szott, in his role as priest and/or pastor, and Father Jerome Brezinski, a fellow priest serving with Defendant Archdiocese, vacationed with Plaintiff in the Florida Keys.  The purpose of the trip was to reward Plaintiff for the hard work he had done in the rectory.  While in Florida, Father Brezinski observed physical contact of a sexual nature between Plaintiff and Defendant Szott but never reported the abuse (Docket No. 8 at ¶ 21).

Also in 1983, Defendant Szott took Plaintiff to Sandusky, Ohio, for two days.  The trip was to reward Plaintiff for his work as an altar boy.  Plaintiff and Szott slept in the same bed during the trip.  While lying on the same bed, Defendant Szott rubbed his erect penis against the area of Plaintiff's rectum (Docket No. 8, at ¶ 22).

In 1984, Defendant Szott, in his role as priest and/or pastor, and Plaintiff vacationed together throughout Europe.  The purpose of the trip was to reward Plaintiff for graduating from the eighth-grade. During the trip, Plaintiff and Defendant Szott shared the same bed (Docket No. 8 at ¶ 23).

In 1986, Defendant Szott was reassigned as pastor to St. Agatha Parish in Redford, Michigan.  St. Agatha Parish was under the supervision and control of Defendant Archdiocese (Docket No. 8 at ¶ 24).

In 1989, Defendant Szott visited Europe with Mark Radke, Father Norman Nawrocki, John Doe Two, and others (Docket No. 8 at ¶ 25).  While in Italy, John Doe Two complained to Radke that he had been sexually assaulted by Defendant Szott (Docket No. 8 at ¶ 26).  Radke reported the incident to Father Nawrocki, a priest within Defendant Archdiocese (Docket No. 8 at ¶ 27).  Father Nawrocki failed to report the complaint (Docket No. 8 at ¶ 28).

3

In 1995, Defendant Archdiocese reassigned Defendant Szott as pastor to St. Lawrence Parish in Utica, Michigan.  St. Lawrence Parish was under the supervision and control of Defendant Archdiocese (Docket No. 8 at ¶ 31).  In the late 1990's Defendant Szott sexually assaulted John Doe Three, a child parishioner at St. Lawrence Parish in a hotel room in Northern Michigan (Docket No. 8 at ¶ 32).

In 2003, Defendant Szott was convicted of child pornography possession and took a leave of absence (Docket No. 8, ¶ 33).  In that same year, Defendant Szott told the father of John Doe Three that he had been dealing with problems regarding child pornography for a long time.  He stated that he had asked Cardinal Adam Maida, of  Defendant Archdiocese, for help but had been ignored (Docket No. 8, ¶ 34).  In 2005, Defendant Szott was permanently removed from the priesthood.  At that time, Szott moved to Arizona where he resided until his death in 2008 (Docket No. 8, ¶ 35).

Plaintiff contends that the Defendant Archdiocese was aware that priests have intimate contact with children and other parishioners (Docket No. 8 at ¶ 10).  In fact, Defendant Archdiocese was informed that Defendant Szott had sexually abused children while serving at the Ascension Parish. Plaintiff alleges that these complaints gave Defendant Archdiocese actual and/or constructive notice that Defendant Szott had sexually abused children.  Defendant Archdiocese did not stop Defendant Szott's inappropriate behavior and concealed his conduct from the public, including Plaintiff and his parents. Plaintiff alleges Defendant Archdiocese fraudulently represented that Defendant Szott was a priest qualified to be around children (Docket No. 8, at ¶ 36).  Plaintiff contends that Defendant Archdiocese failed to closely monitor and supervise Defendant Szott, despite his known inappropriate sexual contact with children. (Docket No. 8, at ¶ 37).

The sexual abuse experienced by Plaintiff caused him to develop confusion, various coping mechanisms, and symptoms of psychological disorders including: shame, guilt, self-blame, depression, repressed memory, disassociation, and traumatic amnesia.  It was not until April 2008, that Plaintiff

4

began to recall the sexual abuse that occurred in Sandusky, Ohio.  It was not until that same time period that Plaintiff began to know or had reason to know, of the link between his sexual abuse and his various psychological and emotional injuries.  During this period,  Plaintiff learned of Defendant Szott's abuse of other children (Docket No. 8, ¶ 38).  Plaintiff alleges Defendant Archdiocese's actions, or failure to act, contributed to Plaintiff's repression of memory and prevented him from recovering from the abuse (Docket No. 8, ¶ 39).

### III.  PROCEDURAL BACKGROUND

Plaintiff filed a complaint and Defendant Archdiocese filed a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6)(2) (Docket Nos. 1 & 5).  Plaintiff subsequently amended his complaint (Docket No. 8).  Plaintiff filed a Response to the Motion to Dismiss (Docket No 9) and Defendant Diocese filed a Reply to Plaintiff's Response (Docket No. 10).

### IV.  STANDARD FOR MOTION TO DISMISS

When presented with a Rule 12(b)(2) motion and opposition, a court has three alternatives:  (1) it may decide the motion on the affidavits alone, (2) it may permit discovery in aid of deciding the motion, or (3) it may conduct an evidentiary hearing to resolve any factual questions.  *Market/Media Research, Inc. v. Union-Tribune Publ'g. Co.*, 951 F.2d 102, 106 (6th Cir. 1991) *cert. denied*, 113 S. Ct. 79 (1992). The decision is within the discretion of the court, and can only be reversed for abuse of that discretion. *Id*.  Where an evidentiary hearing is held on the merits of the motion, a plaintiff must prove jurisdiction by a preponderance of the evidence.  *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).  When no evidentiary hearing is held on the issue of jurisdiction, a plaintiff need only make a *prima facie* showing of personal jurisdiction.  *Id*.

### IV. DISCUSSION

Plaintiff contends that the Court has both general personal jurisdiction, and jurisdiction conferred

by the Ohio long-arm statute over Defendant Archdiocese.  Plaintiff requests that the Motion be denied or, in the alternative, the Court grant him leave to conduct discovery on the issue and reserve judgment on Defendant's motion until discovery is complete. Defendant Archdiocese argues that this Court has no basis for personal jurisdiction, and that the Archdiocese should be dismissed as a party to this suit pursuant to FED. R. CIV. P. 12(b)(2).

**1.      JURISDICTIONAL STANDARDS**

This Court has original jurisdiction of a civil suit between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  *See* 28 U.S.C.S. § 1332 (LexisNexis 2009).  The validity of this Court's order, however, depends on the Court having jurisdiction over the subject matter and the parties.  *Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 903 (6th Cir. 2006) (*citing Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 102 S. Ct. 2099, 2103 (1982)).  The court is powerless to proceed to adjudication without personal jurisdiction.  *Id.* at 903-04 (*citing Ruhrgas AG v. Marathon Oil Co.*, 119 S. Ct. 1563, 1570 (1999)).  Personal jurisdiction centers on the fairness of compelling a defendant to defend a suit in a given forum.  *Id.* at 904 (*citing Schwartz v. Elec. Data Sys., Inc.*, 913 F.2d 279, 294 n. 9 (6th Cir. 1990)).

Two requirements must be met in order for a federal court to exercise personal jurisdiction in a diversity of citizenship case:

(1) jurisdiction must be authorized by the law of the forum state, and
(2) jurisdiction must be in accordance with the due process clause of the Fourteenth Amendment.

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002) (*citing Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994) *cert. denied* 115 S. Ct. 962 (1994)).

The Sixth Circuit has found that the party seeking to assert personal jurisdiction bears the burden of proving jurisdiction exists.  *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (*citing Neogen Corp.*, *supra*, 282 F.3d at 887).  In considering a motion to dismiss for lack of personal jurisdiction, the facts are

6

viewed in the light most favorable to the non-moving party.  *Id.*

**2.      OHIO LONG-ARM STATUTE**

The Ohio long-arm statute is limited in nature, and is not coterminous with federal constitutional limits.  *Id.* at 871 (*citing Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000)).  The Ohio long-arm statute sets forth nine ways that a defendant may subject himself or herself to jurisdiction. Plaintiff, in his response to Defendant's 12(b)(2) motion, has listed three potentially relevant subsections of Ohio's long-arm statute that permit this Court to exercise personal jurisdiction over Defendant:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (3) Causing tortuous injury by an act or omission in this state;
>
> (4) Causing tortuous injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> OHIO REV. CODE ANN. § 2307.382(A)(1),(A)(3),(A)(4) (LexisNexis 2009).

**A.      TRANSACTING BUSINESS IN THE STATE**

Pursuant to OHIO REV. CODE § 2307.382(A)(1), a court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's transacting any business within the state.  *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 511 (6th Cir. 2006) (*citing Ky. Oaks Mall v. Mitchell's Formal Wear*, 53 Ohio St. 3d 73, 559 N.E.2d 477 (1990) *cert. denied*, 111 S. Ct. 1619 (Ohio 1991)).

Ohio courts have held that non-commercial activities can constitute the transaction of business. *Barile v. Univ. of Va.*, 2 Ohio App. 3d 233, 236 (Ohio Ct. App. 1981).  In *Barile*, the Plaintiff, a resident

7

of Ohio, was recruited to play football for the University of Virginia. *Id*. at 234. Plaintiff Barile was injured while playing football and brought suit against the University of Virginia for breach of contract arising out of defendant's failure to provide medical care. *Id*. at 235. The court determined that Ohio had personal jurisdiction over the University of Virginia. *Id*. at 236. The court reasoned that, "It cannot be seriously maintained that college football is not a business, or that the relationship between a college and a student-athlete is not a business relationship." *Id*. at 238.

The instant case can be distinguished from the decision in *Barile*. In *Barile*, the activities in question were of a business nature. The court found that college football is a big business, and that the relationship between a university and a scholar-athlete is contractual in nature. This differs from the goals and intent of Defendant Archdiocese. No allegations in Plaintiff's complaint indicate that Defendant Archdiocese is a moneymaking, business entity. Rather, Defendant Archdiocese is an entity of the Catholic Church, with its goals being to counsel, preach, and further their religious beliefs. Specifically, priests from the Detroit Archdiocese visit sick congregants housed in Ohio hospitals, counsel the elderly in Ohio rest homes, judge nullity cases for the Diocese of Toledo and periodically have given lectures (Docket No. 9). These acts are not contractual in nature. Further, such acts of visiting congregants in Ohio are too speculative to show a continuous and systematic contact with the State of Ohio.

In this case, Plaintiff contends that Defendant Szott transacted business on behalf of Defendant Archdiocese in Ohio. Plaintiff contends the trip to Sandusky was an action within the scope of Defendant Szott's pastoral duties. In particular, the trip was to reward Plaintiff for his work as an altar boy, and one of the duties of Defendant Szott was to counsel, supervise, and train altar boys. Further, Plaintiff contends that since the cause of action arose out of the "business" trip, the Court has jurisdiction over the Defendant Archdiocese. The Magistrate is not persuaded that Defendant Szott's business trip in Ohio

8

was sufficient to constitute the transaction of business in the State of Ohio.  Specific jurisdiction is not proper under OHIO REV. CODE § 2307.382(A)(1) as Plaintiff cannot make a *prima facie* showing that by Defendant Szott's presence in Ohio, he transacted business here.

### B.    CAUSING TORTUOUS INJURY BY AN ACT OR OMISSION IN OHIO

Another way that a defendant may subject himself or herself to jurisdiction is to cause tortuous injury by an act or omission in this state.  Section 2307.382(A)(3) of the Ohio long-arm statute has been interpreted to require a tortuous occurrence where the causing act or omission as well as the resulting tortuous injury occur in Ohio.  *Busch v. Serv. Plastics, Inc.*, 261 F. Supp. 136, 140 (N.D. Ohio 1966).  This act or omission establishes the defendant's contact with Ohio, and it is out of this contact that the cause of action must arise.  *Id*.

In this case, the Plaintiff contends that Defendant Archdiocese had a duty to supervise Defendant Szott.  Plaintiff alleges that this duty does not end at the Michigan border.  Plaintiff further contends that Defendant Archdiocese's failure to supervise resulted in the sexual abuse of Plaintiff and this failure constitutes an omission in the State of Ohio.  Therefore, Plaintiff alleges this Court has personal jurisdiction over Defendant Archdiocese pursuant to OHIO REV. CODE ANN. § 2307.382(A)(3).

Second, Plaintiff contends Defendant Szott was acting within the scope of his pastoral duties when the trip to Sandusky occurred.  Plaintiff alleges that since Defendant Szott was acting within the scope of his duties and as an agent of Defendant Archdiocese, Defendant Archdiocese had a presence in the state.  Hence, Plaintiff contends Defendant Archdiocese is vicariously liable for the actions of Defendant Szott in Sandusky, Ohio.

Plaintiff, in alleging Defendant Archdiocese is subject to jurisdiction under OHIO REV. CODE ANN. § 2307.382(A)(3), cites the Ohio Court of Appeals decision in *Wayne County Bureau of Support v. Wolfe*, 71 Ohio App. 3d 765 (Ohio Ct. App. 1991).  In *Wolfe*, the defendant was a resident of California

9

and lived there with her two sons.  *Wolfe*, 71 Ohio App. 3d at 766-67.  Defendant's estranged husband and two daughters lived in Ohio.  *Id*. at 766-67.  Defendant's two daughters began receiving aid from Wayne County, Ohio, and the county filed a claim for support against the defendant in an Ohio court.  *Id*. at 767.  Defendant argued that Ohio did not have jurisdiction over her person.  *Id*.  The court found that the failure to act when there is a duty to do so constitutes an act or omission in the state.  *Id*. at 770.  The court noted that Ohio places a statutory duty on parents to support minor children living in the state.  *Id*.

In this case, Plaintiff contends that it is not necessary for Defendant Archdiocese to be present in Ohio, to cause a tortuous injury by an act or omission in Ohio.  Plaintiff analogizes the facts in *Wolfe* to this case, contending that Defendant Archdiocese had a duty to act in the State of Ohio.   However, in *Wolfe*, the court noted an actual statutory duty requiring parents to provide for their minor children.  In this case, Plaintiff does not allege any *statutory duty* upon Defendant Archdiocese in the State of Ohio. (Emphasis added).  Plaintiff has failed to indicate any duty imposed by the State of Ohio on the Archdiocese of Detroit, and their first argument is, therefore, without merit.

Plaintiff's second argument hinges on whether Defendant Archdiocese is vicariously liable for the actions of Defendant Szott.   The Sixth Circuit has determined that under Ohio law, employees acting intentionally and maliciously are within the scope of their employment, if they are acting in the course of their employment and within their authority.  *Woods v. McGuire*, 954 F.2d 388, 390 (6th Cir. 1992) (*citing Stranahan Bros. Catering Co. v. Coit*, 55 Ohio St. 398 (Ohio 1896)).  However, an employer is not liable for independent self-serving acts of an employee which in no way facilitate or promote the employer's purpose.  *Id*. (*citing Byrd v. Faber*, 57 Ohio St. 3d 56, 59 (Ohio 1991)).

In this case, the sexual acts of Defendant Szott were not within the course of his employment. The Catholic Church promotes their priests as being chaste and celibate.  Defendant Szott's acts did not facilitate or promote the message of the Archdiocese and they were not authorized.  Therefore, Defendant

10

Szott was not acting within the scope of his employment when the abuse occurred. Defendant Szott was not acting as an agent of Defendant Archdiocese when he molested Plaintiff and Defendant Archdiocese cannot be subject to personal jurisdiction pursuant to OHIO REV. CODE ANN. § 2307.382(A)(3).

**C.** **CAUSING TORTUOUS INJURY IN THE STATE BY AN ACT OR OMISSION OUTSIDE THE STATE AND REGULARLY ENGAGING IN A PERSISTENT COURSE OF CONDUCT IN THE STATE**

Finally, Plaintiff contends that although located in the State of Michigan, Defendant Archdiocese breached its fiduciary duty by failing to supervise, discharge or discipline its priest while in Ohio; therefore, Defendant Archdiocese is subject to jurisdiction under OHIO REV. CODE § 2307.382 (A)(4).

Section 2307.382 (A)(4) only applies when the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Ohio]." *J4 Promotions, Inc. v. Splash Dogs, LLC,* 2009 WL 385611, *8 fn. 10 (N. D. Ohio 2009).

If the Court assumes these allegations to be true, Plaintiff must still make a *prima facie* showing that Defendant Archdiocese regularly does or solicits business in Ohio, engages in a persistent course of conduct in Ohio, or derives substantial revenue from goods used or consumed or services rendered in Ohio.

Plaintiff contends priests under the control of Defendant Archdiocese travel into the Toledo, Ohio, area to perform their pastoral duties. These duties include visiting and counseling ill congregants housed in Toledo hospitals and nursing homes. Plaintiff alleges that Defendant Archdiocese performs other duties in Ohio, including judging marriage nullity cases in the Diocese of Toledo. Defendant Archdiocese exchanges priests with dioceses located in Ohio. Congregants from the State of Ohio attend services at churches located in the Archdiocese of Detroit. Finally, Plaintiff alleges Archdiocese has engaged in business transactions in the State of Ohio (Docket No. 8 at ¶ 6). Plaintiff relies on their

11

argument that Defendant Archdiocese has substantial, continuous, and systematic contacts with the State of Ohio, in contending that they have engaged in a persistent course of conduct in the state. Plaintiff attempts to prove systematic and continuous contacts by pleading jurisdictional facts in his amended complaint. As noted above, the undersigned finds that Defendant Archdiocese's contacts with Ohio were neither continuous nor systematic. Defendant Archdiocese, therefore, was not subject to personal jurisdiction under OHIO REV. CODE § 2307.382(A)(4).

**2.     DUE PROCESS CLAUSE**

The second prong of the test requires that Plaintiff demonstrate that the exercise of jurisdiction over the defendant comports with due process. To meet the requirements of the Due Process Clause of the Fourteenth Amendment, the defendant must have minimum contacts with the forum state and the exercise of personal jurisdiction must be consistent with traditional notions of fair play and substantial justice. *Lum v. Mercedes Benz, USA, LLC*, 433 F. Supp. 2d 853, 855 (N.D. Ohio 2006) (*citing Int'l Shoe Co. v. Washington*, 66 S. Ct. 154, 158 (1945)). "Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Bird*, *supra*, 289 F.3d at 873 (*citing Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992)).

**A.     GENERAL PERSONAL JURISDICTION**

"General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Bird*, 289 F.3d at 873 (*quoting Third Natl. Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). A finding of general jurisdiction involves "a more stringent minimum contacts test." *Pierson v. St. Bonaventure Univ.*, No. 2:05-CV-0581, 2006 WL 181988, at *4 (S.D. Ohio Jan. 23, 2006) (*quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) *cert. denied*, 117 S. Ct. 508 (1996)). The United

12

States Supreme Court has not outlined a specific test to follow in determining whether a defendant's activities in the forum state reach the level of "continuous and systematic." *Avery Dennison Corp. v. Alien Technical Corp.*, 2008 WL 5130424, at *7 (N.D. Ohio 2008) (*citing LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000)).  Rather, the Court looks to the facts of each case in making such a determination. *Id.*

In the instant case, Plaintiff contends that Defendant Archdiocese has contacts with the State of Ohio such that general jurisdiction is proper.  Viewing the complaint in the light most favorable to the Plaintiff, it is clear that some contact between Defendant Archdiocese and the forum state have occurred. In particular, Defendant Archdiocese has exchanged priests with dioceses located in Ohio.  Also, priests from Defendant Archdiocese cross into Ohio to visit and counsel ill congregants located in Ohio hospitals and nursing homes.  Plaintiff also asserts that priests from Defendant Archdiocese travel to Ohio to perform pastoral duties, such as judging marriage nullity cases for the Diocese of Toledo.  Finally, Plaintiff contends that Defendant Archdiocese has engaged in business transactions in Ohio (Docket No. 8 at ¶ 6).

However, in viewing the totality of the contacts between Defendant Archdiocese and the State of Ohio, the Magistrate must reiterate that continuous and systematic contacts do not exist.  The facts in the pleadings do not suggest that Defendant Archdiocese has a regular presence in Ohio.  The pleaded facts suggest that isolated contacts occurred between priests of Defendant Archdiocese and the Diocese of Toledo.  These limited contacts are insufficient to support a finding that general jurisdiction exists.

### B.    SPECIFIC JURISDICTION

"In a specific jurisdiction case, 'a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Third Natl. Bank*, *supra*, 882 F.2d at 1089 (*quoting Helicopteros Nacionales de Columbia, S.A. v. Hall*, 104 S. Ct. 1868 (1984)).  Specific

personal jurisdiction exists where:  1) the defendant purposefully avails itself of the privilege of acting in the forum state or causing a consequence in the forum state; 2) the cause of action arises from the defendant's activities; and 3) the acts of the defendant or consequence caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.  *Lum*, *supra*, 433 F. Supp. 2d at 856 (*citing S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

In this case, the Court has previously noted that Defendant Archdiocese has some contacts with the State of Ohio, but not reaching the level of continuous and systematic.  It can therefore be said that Defendant Archdiocese has purposefully availed itself of the privilege of acting in Ohio.  However, the second prong of the *Mohasco* test is not met in the instant case.  For the reasons detailed above, the cause of action in this case did not arise from the activities of Defendant Archdiocese.  This court does not have specific personal jurisdiction over Defendant Archdiocese.

## VI. DISCOVERY

Plaintiff requests that if the Court is unable to find that he established personal jurisdiction, the Court grant him leave to complete discovery and reserve judgment on the Motion to Dismiss until after discovery is complete should the court find personal jurisdiction has not been established.

Scholars have noted that it has "not always been clear whether the FRCP permit jurisdictional discovery."  STEVEN R. SWASON, *Jurisdictional Discovery Under the Foreign Sovereign Immunities Act*, 13 EMORY INT'L. L. REV. 445, 457-59 (1999) (discussing the history of jurisdictional discovery).  Technically, before jurisdiction has been established a court lacks power to order discovery.  *Id*.

However, the Supreme Court has noted that discovery is not limited to issues involving the merits of the case, but extends to many fact-orientated issues not related to the merits of the case.  *Oppenheimer Fund, Inc. v. Sanders*, 98 S. Ct. 2380, 2389 (1978).  "For example, where issues arise as to jurisdiction or

14

venue, discovery is available to ascertain the facts bearing on such issues." *Id*. at 2389, n. 13.

The Sixth Circuit has found that a district court faced with a motion to dismiss for lack of personal jurisdiction may allow the plaintiff additional discovery to further investigate jurisdictional facts. *Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir. 1991).  Whether additional discovery is granted is within the discretion of the district court.  *Id*.  Also the scope of discovery is within the discretion of the court.  The district court's rulings on discovery are subject to reversal only for abuse of that discretion. *Id*. (*citing Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).

In this case, the Court finds that Plaintiff had ample time to investigate the issue of jurisdiction and to demonstrate a *prima facie* showing of personal jurisdiction.  Since the initial filing of Defendant's motion to dismiss, Plaintiff has amended his complaint to include additional jurisdictional facts. Discovery was scheduled to be completed by May 9, 2009.  Nothing on the docket indicates that Plaintiff took efforts to complete discovery prior to the expiration of the discovery deadline.  Further, Plaintiff failed to file a motion requesting an extension of the discovery deadline.  Plaintiff's alternative request that jurisdictional discovery be granted is denied.

## VII. CONCLUSION

For the foregoing reasons, it is ordered that the Motion to Dismiss of Defendant Dioceses (Docket No. 5) be granted and that the case be closed inasmuch as Defendant Szott is deceased and his estate has not been joined or served in this litigation .

**IT IS SO ORDERED**

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:      July 31, 2009

15